O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARLOS A. FLORES,                    )   NO. CV 12-01424-MAN
                                     )
            Plaintiff,               )
                                     )   MEMORANDUM OPINION
       v.                            )
                                     )   AND ORDER
CAROLYN W. COLVIN,[1]                )
Acting Commissioner of Social        )
Security,                            )
                                     )
            Defendant.               )
_____)

     Plaintiff filed a Complaint on February 23, 2012, seeking review of
the denial of plaintiff's application for a period of disability and
disability insurance benefits ("DIB").  On March 13, 2012, the parties
consented, pursuant to 28 U.S.C. § 636(c), to proceed before the
undersigned United States Magistrate Judge.  The parties filed a Joint
Stipulation on December 13, 2012, in which:  plaintiff seeks an order
reversing the Commissioner's decision and remanding this case for the

_____

     [1]   Carolyn W. Colvin became the Acting Commissioner of the Social
Security Administration on February 14, 2013, and is substituted in
place of former Commissioner Michael J. Astrue as the defendant in this
action.  (*See* Fed. R. Civ. P. 25(d).)

payment of benefits; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for a period of disability and DIB on December 5, 2007. (Administrative Record ("A.R.") 191, 261.) Plaintiff, who was born on June 8, 1970,[2] claims to have been disabled since September 13, 2006 (A.R. 16, 191). Plaintiff has past relevant work experience as construction worker. (A.R. 22.)

After the Commissioner denied plaintiff's claims initially (A.R. 123-27), plaintiff requested a hearing (A.R. 128). On May 12, 2009, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Robert S. Eisman (the "ALJ"). (A.R. 70-104.) Vocational expert Freeman Leeth also testified. (*Id.*) On June 5, 2009, the ALJ denied plaintiff's claim. (A.R. 109-15.)

Plaintiff requested review of the ALJ's decision (A.R. 264-69), and the Appeals Council subsequently vacated the ALJ's decision and remanded the case to the ALJ for further proceedings (A.R. 119-122). In its Order, the Appeals Council ordered the ALJ to: (1) "[r]ule on the issue of disability in [plaintiff]'s case through December 31, 2007, the date that he last met the insured status requirements of the Social Security

---

[2]     On the alleged onset date, plaintiff was 36 years old, which is defined as a younger individual. (A.R. 22; citing 20 C.F.R. § 404.1563.)

Act"; (2) "[g]ive further consideration to [plaintiff]'s maximum [RFC] and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations"; and (3) "[i]f warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [plaintiff]'s occupational base." (A.R. 121.)

On September 14, 2010, plaintiff again appeared and testified before the ALJ. (A.R. 29-57.) Vocational expert Joseph Torres and medical expert William Temple, M.D. also testified. (*Id.*) On October 1, 2010, the ALJ denied plaintiff's claim (A.R. 16-24), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-4). That decision is now at issue in this action.

**SUMMARY OF ADMINISTRATIVE DECISION**

In his October 1, 2010 decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2007,[3] and he has not engaged in substantial gainful activity since September 13, 2006, the alleged onset date of his disability. (A.R. 19.) The ALJ determined that plaintiff has the severe impairments of "status post anterior and posterior L4-S1 lumbar spine fusion with internal fixation for degenerative disk disease, with spondylolisthesis and spondylosis," but he does not have an impairment or combination of impairments that meets or medically equals one of the

---

[3]    The ALJ also found that plaintiff "meets the insured status requirements through September 30, 2012 for Medicare only based upon Medicare Qualified Government Employment." (A.R. 19 n.1.)

3

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.*)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) from September 13, 2006, the alleged onset date, to June 21, 2007, the date of his surgery. (A.R. 19.) Specifically, the ALJ found that, during this time period, plaintiff could: "exert up to 10 pounds of force occasionally and/or exert a negligible amount of force frequently to move objects, including the human body"; "stand and walk up to 2 hours and sit up to 6 hours in an 8-hour workday with normal breaks"; "perform work that does not require climbing ladders, ropes or scaffolds"; perform "no more than frequent balancing and kneeling"; "perform work that allows for use of a hand-held assistive device for prolonged ambulation, i.e., more than 30 minutes, and when walking on uneven terrain or ascending and descending slopes"; and "perform work that does not require any exposure to extreme vibration, and any concentrated exposure to hazardous machinery, unprotected heights, or other high risk, hazardous or unsafe conditions." (A.R. 19-20.) However, as of June 21, 2007, the ALJ found that plaintiff "was not able to work due to surgery and needed recovery/rehabilitation, which was expected to continue for no more than 9-10 months, after which time [plaintiff] could resume sedentary work, including occasional stooping and crouching, with subsequent ability to do light exertion level work with frequent stooping and crouching." (A.R. 20.)

The ALJ found that plaintiff was unable to perform his past

4

relevant work as a construction worker.  (A.R. 22.)  However, based upon his RFC assessment for plaintiff and after having considered plaintiff's age, education,[4] work experience, and the testimony of the vocational expert, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform," including the jobs of "order clerk," "cable worker," and "product sorter."  (A.R. 23.)  Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from September 13, 2006, the alleged onset date, through December 31, 2007, the date last insured.  (A.R. 24.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance."  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of

---

[4]   The ALJ found that plaintiff has at least a high school education and is able to communicate in English.  (A.R. 22.)

1    the Commissioner, the Court nonetheless must review the record as a
2    whole, "weighing both the evidence that supports and the evidence that
3    detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of
4    Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also
5    Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is
6    responsible for determining credibility, resolving conflicts in medical
7    testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d
8    1035, 1039 (9th Cir. 1995).
9
10        The Court will uphold the Commissioner's decision when the evidence
11   is susceptible to more than one rational interpretation.  Burch v.
12   Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may
13   review only the reasons stated by the ALJ in his decision "and may not
14   affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d
15   at 630; see also Connett, 340 F.3d at 874.  The Court will not reverse
16   the Commissioner's decision if it is based on harmless error, which
17   exists only when it is "clear from the record that an ALJ's error was
18   'inconsequential to the ultimate nondisability determination.'" Robbins
19   v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v.
20   Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d
21   at 679.
22
23                               **DISCUSSION**
24
25        Plaintiff   claims   the   ALJ   erred   by   not   considering
26   properly:  (1) the opinions of plaintiff's treating physicians; and
27   (2) plaintiff's subjective symptoms and credibility. (Joint Stipulation
28   ("Joint Stip.") at 4-8, 11-14, 16-17.)

                                    6

1    **I.    The ALJ Failed To Set Forth Appropriate Reasons For**
2          **Rejecting The Opinions Of Plaintiff's Treating**
3          **Physicians.**
4
5         It is the responsibility of the ALJ to analyze evidence and resolve
6    conflicts in medical testimony.  Magallanes v. Bowen, 881 F.2d 747, 750
7    (9th Cir. 1989).   In the hierarchy of physician opinions considered in
8    assessing a social security claim, "[g]enerally, a treating physician's
9    opinion carries more weight than an examining physician's, and an
10   examining physician's opinion carries more weight than a reviewing
11   physician's."   Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir.
12   2001); 20 C.F.R. § 404.1527(d).
13
14        The opinions of treating physicians are entitled to the greatest
15   weight, because the treating physician is hired to cure and has a better
16   opportunity to observe the claimant.  Magallanes, 881 F.2d at 751.  When
17   a treating physician's opinion is not contradicted by another physician,
18   it may be rejected only for "clear and convincing" reasons.  Lester v.
19   Chater, 81 F.3d 821, 830 (9th Cir. 1995).  When contradicted by another
20   doctor, a treating physician's opinion may only be rejected if the ALJ
21   provides "specific and legitimate" reasons supported by substantial
22   evidence in the record.  *Id.*
23
24        A.    Dr. Williams
25
26        In his decision, the ALJ rejected the opinion of Lytton A.
27   Williams, M.D., an orthopedic surgeon, in favor of that of non-
28   examining, medical expert William E. Temple, M.D., an orthopedic

7

surgeon, because:   (1) "Dr. Williams is a physician who treated [plaintiff] for workers' compensation purposes, i.e., for the specific purpose of examining and treating [plaintiff] because he applied for workers' compensation benefit, which raises a specter of bias"; and (2) Dr. Williams rendered an opinion that plaintiff was disabled and/or unable to work -- a determination which is reserved to the Commissioner. (A.R. 21-22.)

The ALJ's first reason for rejecting Dr. McLennan's opinion -- *to wit*, that a specter of bias is raised, because Dr. Williams is a workers' compensation physician -- is unavailing.  The ALJ has failed to point to, and the record does not contain, *any* evidence of impropriety or bias on the part of Dr. Williams.  *See* <u>Lester</u>, 81 F.3d at 832 ("'The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits'")(citation omitted); *see also* <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1465 (9th Cir. 1996)(noting that the source of a report is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for the opinion).  Further, an ALJ "may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." <u>Booth v. Barnhart</u>, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002)(citing <u>Coria v. Heckler</u>, 750 F.2d 245, 247 (3d Cir. 1984)(holding that by failing to consider medical reports submitted in state workers' compensation proceedings the ALJ failed to weigh all the evidence of record)).  Accordingly, the ALJ's first rationale does not constitute a specific and legitimate reason for rejecting the opinion of Dr. Williams.

The ALJ's second reason for rejecting the opinion of Dr. Williams is misguided. While it is true that a treating physician's opinion on the matter of ultimate disability is not determinative or entitled to special weight, "a treating physician's *medical* opinions are generally [entitled] to more weight." Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008)(citing 20 C.F.R. § 404.1527(d)(2)). A medical opinion "'reflect[s] judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions.'" *Id.* (citing 20 C.F.R. § 404.1527(a)(2)). Here, beyond finding that plaintiff was temporarily disabled and/or unable to work, Dr. Williams diagnosed plaintiff with, *inter alia*, a loose screw at the L4 location and painful hardware/instrumentation as a result of his lumbar spine fusion (A.R. 531), chronic lumbosacral sprain/strain (A.R. 536, 553, 556), degenerative disc disease at L3-S1 (A.R. 541, 545), and radiculopathy at L4 and L5 (A.R. 549). In addition, Dr. Williams opined that plaintiff would have "difficulty with prolonged sitting, standing and walking." (A.R. 397.) Dr. Williams' treatment records document plaintiff's continued complaints of, *inter alia*, moderate to severe pain in his lower back and bilateral lower extremities as well as Dr. Williams' findings of diminished reflexes at plaintiff's bilateral knees and ankles, positive orthopedic testing, and restricted range of motion, tenderness, and spasms in plaintiff's back.[5]

---

[5]    *See, e.g.,* A.R. 397 (11/25/08 Report – noting plaintiff "has moderate constant low back pain and right leg pain" and "restricted and painful range of motion on flexion, extension, lateral bending and rotation, tenderness and spasms to midline and paraspinal muscles, diminished reflexes to the knees and ankles, decreased motor strength,

While the Commissioner correctly asserts that most of the treatment records post-date plaintiff's date last insured of December 31, 2007, Dr. Williams' records show that plaintiff's spinal surgery resulted in a complication, *to wit*, a loose screw and painful instrumentation, which resulted in a subsequent hardware removal surgery -- a complication which was not accounted for in the ALJ's RFC assessment.  As relevant here, the ALJ's RFC assessment for plaintiff provided that "as of June 21, 2007, [plaintiff] was not able to work due to surgery and needed recovery/rehabilitation, *which was expected to continue for not more than 9-10 months*, after which time [plaintiff] could resume sedentary work."  (A.R. 20; emphasis added.)  In so finding, the ALJ relied upon the testimony of non-examining physician Dr. Temple, who had the opportunity to review Dr. Williams' diagnosis of the loose screw, but not his latter diagnosis of painful instrumentation/hardware for which

---

as well as positive orthopedic testing including positive straight leg raise on the right with reproduction of back pain and positive Lasegue test on the right"); A.R. 526-27 (10/19/09 Report - noting plaintiff's "continued subjective complaints of moderate to severe constant pain in the low back with radiation of pain, numbness and tingling sensation to the bilateral legs, left greater than right, weakness in his bilateral legs, ambulating with a cane, combined with the objective findings of decreased and restricted range of motion of the lumbar spine with flexion, extension and lateral bending, pain with extension, tenderness and spasms to midline and paraspinal muscles[,] abnormal gait, diminished reflexes at the bilateral knees and ankles, decreased motor strength at the bilateral anterior tibialis, EHL and gastroc soleus, decreased sensation to light touch at the left lower extremity, as well as positive orthopedic testing including positive straight leg raising bilaterally with reproduction of back pain and positive Lasegue test bilaterally"); A.R. 522 (12/2/09 Report – noting plaintiff's "continued subjective complaints of worsened and increasing severe constant pain in the low back and bilateral legs with associated spasm, abnormal motion in his back, increased weight due to inactivity and limitations, [as well as] objective findings of decreased and restricted range of motion with flexion, extension, lateral bending and rotation, pain with extension, tenderness and spasm to midline and paraspinal muscles, diminished reflexes at the bilateral knees and ankles, as well as positive orthopedic testing including positive straight leg raising bilaterally and reproduction of back pain and positive Lasegue test bilaterally").

10

plaintiff had removal surgery.[6]  Critically, this evidence could have affected Dr. Temple's opinion regarding plaintiff's recovery time. Given these circumstances, the ALJ's apparent rejection of Dr. Williams' opinion on the ground that it also contained an opinion regarding the ultimate issue of disability is not legitimate.  *See* Boardman, 286 Fed. Appx. at 399 (finding that "while [the fact that the treating physician expressed an opinion regarding Boardman's ultimate disability and residual functional] may be a specific reason to reject a treating physician's medical opinion, it is not a legitimate one").[7]

Accordingly, for the aforementioned reasons, the ALJ failed to properly reject the opinion of Dr. Williams.

### B.   Dr. North

In a March 11, 2009 Mental Impairment Questionnaire ("March 11 Questionnaire"), Dr. Richard North, who began treating plaintiff in May 2008, diagnosed plaintiff with depressive disorder and assessed

---

[6]     Indeed, when asked about plaintiff's later hardware removal surgery, Dr. Temple testified that "[o]ne reason [for the surgery] might have been that [plaintiff] had that screw that was loose in there and they may have wanted to inspect the fusion to make sure that it was indeed solid as it was shown on the X-rays." (A.R. 48.)  Notably, Dr. Temple's testimony indicates that he was entirely unaware of Dr. Williams' painful hardware/instrumentation diagnosis and the resulting pain and symptoms that plaintiff suffered.

[7]     Moreover, while it is true that medical source opinions on issues reserved to the Commissioner, such as the determination of claimant's ultimate disability, are not determinative or entitled to special weight based on the source of the medical opinion, it is not true that the Commissioner is free to disregard this information.  Social Security Ruling ("SSR") 96-8p, 1996 SSR LEXIS 5, at *21 n.8.  Rather, the ALJ is instructed to consider such opinions in adjudicating a disability claim.  *Id.*

plaintiff with a GAF score of 63.  (A.R. 512.)  Dr. North opined that, with respect to the abilities and aptitudes necessary to do unskilled work, plaintiff was "[l]imited but satisfactory" in his ability to: remember work-like procedures; understand, remember, and carry out very short and simple instructions; maintain attention for a two hour segment; work in coordination with or proximity to others without being unduly distracted; perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (A.R. 513-14.) Dr. North further opined that plaintiff would be severely limited in, but not precluded from, the following mental abilities and aptitudes necessary to do unskilled work:  maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; complete a normal weekday and work week without interruptions from psychologically based symptoms; respond appropriately to changes in a routine work setting; deal with normal work stress; and be aware of normal hazards and take appropriate precautions.  (*Id.*)

With respect to semiskilled and skilled work, Dr. North opined that plaintiff would be "[l]imited but satisfactory" in his mental abilities and aptitudes to:  understand and remember detailed instructions; carry out detailed instructions; set realistic goals or make plans independently of others; and deal with the stress of semiskilled and skilled work.  (A.R. 515.)  With respect to the mental abilities and aptitudes necessary to do "particular types of jobs," Dr. North opined

that plaintiff would be "[l]imited but satisfactory" in his ability to: interact appropriately with the general public; maintain socially appropriate behaviors; adhere to basic standards of neatness and cleanliness; and travel in unfamiliar places. (*Id.*)  Dr. North opined that in terms of functional limitations, plaintiff would have "None-Mild":  restrictions of activities of daily living; difficulties in maintaining social functioning; and deficiencies of concentration, persistence, or pace.  (A.R. 516.)  As a result of plaintiff's impairments or treatment, Dr. North opined that plaintiff would be absent from work more than four days per month.  (*Id.*)

In his decision, the ALJ failed to mention, let alone give an appropriate reason for rejecting, the opinion of Dr. North.  This constitutes error.  While it is true, as the Commissioner contends, that Dr. North's March 11 Questionnaire post-dates plaintiff's date last insured (Joint Stip. at 11), the Ninth Circuit has held that "[m]edical evaluations made after the expiration of a claimant's insured status are relevant to the pre-expiration conditions."  Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988), reaffirmed in Lester, 81 F.3d at 832.  In this case, there is evidence that plaintiff suffered from depression both prior to, and after, his date last insured.  For example, plaintiff alleged in his Exertional Daily Activities Questionnaire dated December 28, 2007, that he was depressed.  (*See, e.g.*, A.R. 219, 221.)  In addition, at the May 12, 2009 Administrative Hearing, plaintiff testified that his depression stemmed from his 2006 injury and that he had been seen by a psychiatrist for approximately 12 sessions and was currently taking medication for his depression.  (A.R. 84-86.)  Further, at the September 14, 2010 administrative hearing, Dr. Temple, the

1   medical expert to whom the ALJ gave great weight, noted that plaintiff
2   has a "psychiatric diagnosis of depression which is not unusual in these
3   cases." (A.R. 42.)   Indeed, in his decision, the ALJ noted that
4   "[plaintiff] has made several allegations concerning the nature,
5   intensity, frequency, persistence and limiting effects of [his] *mental*
6   and physical symptoms." (A.R. 20; emphasis added.)   Accordingly, in
7   view of this evidence, the Court cannot find the ALJ's failure to
8   address Dr. North's opinion -- an opinion which may have shed light on
9   plaintiff's pre-expiration condition -- to be harmless.   Thus, remand is
10  appropriate.[8]

11

12      **II.   The ALJ Failed To Give Clear And Convincing Reasons For**
13          **Finding Plaintiff's Subjective Symptoms To Be Not**
14          **Credible.**

15

16      Once a disability claimant produces objective medical evidence of
17  an underlying impairment that is reasonably likely to be the source of
18  claimant's subjective symptom(s), all subjective testimony as to the
19  severity of the symptoms must be considered.   Moisa v. Barnhart, 367
20  F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 346
21  (9th Cir. 1991); *see also* 20 C.F.R. § 404.1529(a) (explaining how pain
22  and other symptoms are evaluated).   "[U]nless an ALJ makes a finding of
23  malingering based on affirmative evidence thereof, he or she may only
24  find an applicant not credible by making specific findings as to

25

26      [8]   Although the Commissioner now offers other reasons to explain
    the ALJ's rejection of the opinion of Dr. North, the Court cannot
    entertain these post hoc rationalizations. *See, e.g.,* Orn, 495 F.3d at
27  630 ("We review only the reasons provided by the ALJ in the disability
    determination and may not affirm on a ground upon which he did not
28  rely").

credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c).

An ALJ may not rely on a plaintiff's daily activities to support an adverse credibility determination when those activities do not affect the claimant's ability to perform appropriate work activities on an ongoing and daily basis. Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990). As the Ninth Circuit noted in Lester, the ALJ must evaluate claimant's "'ability to work on a *sustained* basis.'" 81 F.3d at 833 (emphasis in original; citation omitted). A claimant need not be "utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)(internal citations omitted).

In his Exertional Daily Activities Questionnaire, plaintiff indicated, *inter alia*, that his "pain keeps [him] from walking, sitting, standing, and twisting." (A.R. 219.) Plaintiff noted that he is unable to carry out a normal workday, because: (1) he experiences weakness in

15

his legs when he stands and walks; and (2) his medications make him feel drowsy and tired, and he experiences dry mouth.  (*Id.*)  Plaintiff stated he can walk for 8 minutes at a speed of 1.2 miles per hour, but "[i]t makes [him] feel tired, weak, and makes [his] legs weak."  (*Id.*)  He also stated that he can climb "6 to 8 flights [of stairs] a day[, but] it's very difficult for [him] because of the pain in [his] back."  (A.R. 220.)  Additionally, plaintiff indicated that he is depressed.  (A.R. 219, 221.)

At the May 12, 2009 Administrative Hearing, plaintiff testified that he is taking Cyclobenzaprine, Norco, Lyrica, and Lidoderm patches for his pain as well as Lexapro and Cymbalta for his depression.  (A.R. 80.)  Plaintiff testified that these medications make him experience dry mouth and drowsiness as well as not feel "100 percent – clear [in his] mind."  (A.R. 92-93.)  In addition to his medications, plaintiff testified that he uses electrical stimulation "[a]bout three or four hours a [day], . . . for thirty minutes [at a time]" to treat his pain (A.R. 83); he also testified that he uses a cane, which was given to him by his doctor, when he ambulates and when he is sitting to help alleviate the pressure on his back (A.R. 86, 92).

As noted *supra*, the ALJ found that plaintiff has the severe impairments of:  "status post anterior and posterior L4-S1 lumbar spine fusion with internal fixation for degenerative disk disease, with spondylolisthesis and spondylosis."  (A.R. 19.)  The ALJ also found that "[plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (A.R. 20.)  Further, the ALJ cited no evidence of malingering by plaintiff.  Accordingly, the ALJ's

16

reason for discrediting plaintiff's subjective complaints must be clear and convincing.

The ALJ found that "[plaintiff]'s statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with [the ALJ's RFC] assessment."  (A.R. 20.)   In so finding, the ALJ incorporated by reference the findings and conclusions of his June 5, 2009 decision, which, according to the ALJ, "included a detailed analysis of the objective medical evidence and other credibility factors which do not fully support [plaintiff]'s complaints and render his assertions only partially credible."  (*Id.*)

In his June 5, 2009 decision, while the ALJ discussed the objective evidence, the ALJ did not give any clear and convincing reasons for finding plaintiff's subjective symptoms to be only "partially credible." Specifically, the ALJ stated:

> In determining [plaintiff]'s [RFC], great weight has been accorded to the opinion of the State Agency medical consultant who found [plaintiff] capable of performing sedentary work with occasional postural restrictions.  Such restrictions are consistent with the objective clinical and diagnostic findings of ongoing lower back pain resulting in surgery and possible future surgery due to loose hardware.  Nevertheless, in giving [plaintiff]'s subjective allegations full consideration and benefit of the doubt, the [ALJ] has additionally factored in to the [RFC] the need to use a hand-held assistive device for

17

1    prolonged ambulation and walking on uneven terrain, and the
2    need to avoid hazardous and unsafe working conditions.

4    [Plaintiff]'s own self-reported activities of daily living
5    also support the [RFC].  [Plaintiff] has indicated that he can
6    walk 1.2 miles per hour and apparently walk for 8 minutes at
7    a time.  [Plaintiff] has also stated that although it leaves
8    him tired, he can walk 6-8 flights of stairs a day.  Such
9    allegations, while demonstrating significant restrictions in
10   the ability to sustain prolonged ambulation, nevertheless,
11   support a [RFC] of standing/walking for 2 hours per 8-hour
12   workday with normal breaks.  His allegations of being able to
13   lift 5 pounds is also consistent with a restriction of lifting
14   no more than 10 pounds occasionally lifting small office items
15   or tools.

17   (A.R. 113; internal citations omitted.)

19        Although not entirely clear, to the extent the ALJ rejects
20   plaintiff's subjective symptoms because they are not supported by the
21   objective evidence, the failure of the medical record to corroborate a
22   claimant's subjective symptoms fully is not, by itself, a legally
23   sufficient basis for rejecting such testimony.  Rollins v. Massanari,
24   261 F.3d 853, 856 (9th Cir. 2001); Bunnell, 947 F.2d at 347 (noting that
25   "[i]f an adjudicator could reject a claim of disability simple because
26   [plaintiff] fails to produce evidence supporting the severity of the
27   pain, there would be no reason for an adjudicator to consider anything
28   other than medical findings").  Accordingly, the ALJ's reasoning cannot,

18

by itself, constitute a clear and convincing reason for rejecting plaintiff's subjective symptoms. *See* Varney v. Secretary, 846 F.2d 581, 584 (9th Cir. 1988); Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986).

To the extent the ALJ finds plaintiff to be not credible because of his daily activities, the ALJ's reasoning is flawed. While it is true that an ALJ may find a claimant not credible if there is an inconsistency between the claimant's daily activities and his alleged symptoms, the ALJ has failed to identify any such inconsistency. *See* Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."). As such, the ALJ's reasoning is neither clear nor convincing.

Moreover, although the ALJ states that plaintiff's RFC is supported by the objective evidence and "to a certain degree [by plaintiff]'s own allegations regarding his functional abilities," the ALJ failed to give any reason for failing to credit the full extent of plaintiff's alleged functional limitations. For example, as noted *supra*, plaintiff alleged that he cannot lift or carry more than five pounds or walk for more than 8 minutes at a speed of 1.2 miles an hour without feeling "tired" and "weak" in his legs. Notwithstanding these allegations, the ALJ opined that plaintiff, except for the time that he was recovering from surgery, could perform "sedentary work" -- work that exceeds plaintiff's limitations and includes lifting up to 10 pounds, walking up to two hours, and sitting up to six hours in an eight-hour workday with normal breaks. Critically, however, the ALJ failed to explain why he did not

find plaintiff's allegations to be fully credible and/or how he reconciled the differences between plaintiff's alleged symptoms and the RFC assessment.    Further, the ALJ failed to discuss plaintiff's depression and/or the side effects of plaintiff's medications, which cause him to feel tired and drowsy and have dry mouth.  *See* Erickson v. Shalala, 9 F.3d 813, 817-18 (th Cir. 1993)(noting that an ALJ must consider all factors, including the side effects of medications, that might have a "significant impact on an individual's ability to work"). This constitutes error.

Accordingly, for the aforementioned reasons, the ALJ committed error, because he failed to give clear and convincing reasons, as required, for finding plaintiff to be not credible.[9]

**III. Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where there are

---

[9]    While the Commissioner now offers other reasons to explain the ALJ's credibility determination, the Court cannot entertain these post hoc rationalizations. *See, e.g.,* Connett, 340 F.3d at 874 (finding that "[i]t was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); *see* Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)(ordering remand so that the ALJ could articulate specific and appropriate findings, if any existed, for rejecting the claimant's subjective pain testimony). On remand, the ALJ must correct the above-mentioned deficiencies and errors. After doing so, the ALJ may need to reassess plaintiff's RFC, in which case additional testimony from a vocational expert likely will be needed to determine what work, if any, plaintiff can perform.

///
///
///
///
///
///
///
///
///
///
///

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  July 1, 2013

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE